UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TYRONE DENSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:16 CV 114 ACL |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Tyrone Denson brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Denson's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

## I. Procedural History

Denson protectively filed his applications for DIB and SSI on August 15, 2013. (Tr. 10, 175-87.) He alleged that he became disabled on October 15, 2011, due to learning problems and hyperactivity. (Tr. 207.) Denson's claims were denied initially. (Tr. 91-94.) Following an administrative hearing, Denson's claims were denied in a written opinion by an ALJ, dated February 23, 2015. (Tr. 7-20.) Denson then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 12, 2016. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Denson argues that the ALJ erred by failing to properly consider whether Denson's intellectual deficits met or medically equaled Listing 12.05C.

## II. The ALJ's Determination

The ALJ stated that Denson met the insured status requirements of the Social Security Act through September 30, 2016. (Tr. 12.) The ALJ found that Denson had not engaged in substantial gainful activity since his alleged onset date of October 15, 2011. *Id.*

In addition, the ALJ concluded that Denson had the following severe impairments: lumbago, obesity, and borderline intellectual functioning. *Id.* The ALJ found that Denson did not have an impairment or combination of impairments that meet or equal in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In making this determination, the ALJ considered Denson's mental impairment under the requirements of Listing 12.05, but found that the requirements were not met. (Tr. 13.)

As to Denson's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he cannot lift and carry more than 50 pounds occasionally and 25 pounds frequently, and sit, stand and walk more than 6 out of 8 hours total in an 8 hour workday. The claimant can perform simple routine 1-2 step tasks and instructions with only occasional decisionmaking.

(Tr. 14.)

The ALJ found that Denson's allegations regarding his limitations were not entirely credible. (Tr. 15.)

The ALJ further found that Denson was capable of performing past relevant work as a poultry hanger and hand packer. (Tr. 18.) The ALJ found in the alternative, based on the testimony of a vocational expert, that Denson could perform other jobs existing in significant numbers in the national economy, such as dishwasher and cleaner. (Tr. 18-19.) The ALJ therefore concluded that Denson has not been under a disability, as defined in the Social Security Act, from October 15, 2011, through the date of the decision. (Tr. 19.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on August 15, 2013, the claimant is not disabled as defined in sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively field on August 15, 2013, the claimant is not disabled under section 1614(a)(3)(A).

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists." *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

**IV. Discussion**

Denson argues that the ALJ erred as a matter of law when he failed to properly consider whether Denson's intellectual deficits met or medically equaled Listing 12.05C at step three of the sequential evaluation.

"[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). "If the claimant wins at the third step (a listed impairment), [ ]he must be held disabled, and the case is over." *Jones v. Barnhart,* 335 F.3d 697, 699 (8th Cir. 2003). But "[m]erely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing. 'An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.'" *McCoy v. Astrue,* 648 F.3d 605, 611-12 (8th Cir. 2011) (quoting *Zebley,* 493 U.S. at 530). The burden is on the claimant to demonstrate that his impairment matches all the specified criteria of a listing. *McDade v. Astrue*, 720 F.3d 994, 1001 (8th Cir. 2013).

Listing 12.05C states:

12.05 *Intellectual disability*[2]*:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning

---

[2] The listing was revised on Sept. 3, 2013, to refer to "intellectual disability" rather than "mental retardation."

initially manifested during the developmental period; *i.e.,* the evidence
demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements
in A, B, C, or D are satisfied.
...
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical
or other mental impairment imposing an additional and significant work-related
limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

Listing 12.05C therefore requires: 1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested ... before age 22," 2) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and 3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*; *Scott v. Berryhill*, 855 F.3d 853, 856 (8th Cir. 2017).

The ALJ analyzed Listing 12.05C as follows:

In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant has a full-scale IQ score of 67 and low back pain that does not impose any additional or significant work-related limitations of functioning.

(Tr. 13.)

Denson argues that the ALJ failed to properly consider whether his intellectual deficits met or equaled Listing 12.05 because: (1) the ALJ's own findings establish that Denson has the requisite IQ scores and additional other impairment to meet the second and third requirements of the Listing; and (2) the ALJ never considered whether Denson had the requisite deficits of adaptive functioning.

Defendant concedes that the second and third elements are met due to Denson's valid IQ score of 67, and the ALJ's finding that his lumbago and obesity were severe impairments.[3] *See Cook v. Bowen*, 797 F.2d 687 (8th Cir. 1986) (severe physical impairment necessarily imposes a significant work-related limitation of function under section 12.05C). Defendant disputes that the ALJ did not consider whether Denson had the requisite deficits of adaptive functioning. Defendant further argues that, even if the ALJ had failed to discuss Denson's adaptive functioning, this was not reversible error because the ALJ properly concluded that Denson did not have sufficient deficits in adaptive functioning to meet the final requirement of Listing 12.05C.

It is true that the ALJ did not discuss Denson's adaptive functioning when analyzing 12.05C. As Defendant points out, however, the ALJ did refer to Denson's adaptive functioning in assessing Denson's concentration, persistence or pace in connection with Listing 12.05D. Specifically, the ALJ stated, in relevant part: "He has valid IQ scores that place him in the low range of intellectual functioning *but his current adaptive functioning suggests he is functioning in the borderline intellectual functioning range*." (Tr. 14) (emphasis added).

Generally, "an ALJ's failure to adequately explain his factual findings is 'not a sufficient reason for setting aside an administrative finding.'" *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (quoting *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)). Remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Id.* An ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *Pepper ex rel. Gardner v.*

---

[3] Because there is no dispute regarding Denson's physical impairments, the undersigned will not discuss those impairments.

*Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003). The Eighth Circuit has "consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne*, 198 F.3d at 1067.

In this case, although the ALJ's analysis of Listing 12.05C was deficient, his ultimate conclusion that Denson's intellectual impairment did not meet the requirements of the Listing is supported by substantial evidence.

To meet the criteria for an intellectual impairment described in Listing 12.05C, Denson must demonstrate that he suffers "deficits in adaptive functioning." *Maresh v. Barnhart,* 438 F.3d 897, 899 (8th Cir. 2006) (requirements in introductory paragraph are mandatory); *Cheatum v. Astrue,* 388 Fed.Appx. 574, 576 (8th Cir. 2010) (per curiam) (requirements include showing deficits in adaptive functioning). Notably, Listing 12.05 does not expressly define "deficits in adaptive functioning." While the SSA has cautioned against restricting its definition to one used by professional organizations for diagnostic purposes alone—such as the definition set out in the Diagnostic and Statistical Manual of Mental Disorders (DSM)—it nevertheless allows the use of professional organizations to assist the Commissioner in determining whether the necessary elements of mental retardation have been established under the Regulations.[4] *See* 67 Fed.Reg. 20018–01, at *20022, 2002 WL 661740 (SSA Apr. 24, 2002); *see also Maresh,* 438 F.3d at 899 (noting the Commissioner to have rejected a proposal that the DSM's definition of mental retardation be used for Listing 12.05).

---

[4] The DSM-5 defines "adaptive functioning" as "how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." *American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 37 (5th ed. 2013) ("*DSM V*"). Adaptive functioning "involves adaptive reasoning in three domains: conceptual, social, and practical." *Id.*

Denson argues that the fact that he was enrolled in special education services when he was in school and was routinely ranked among the lowest in his class "by definition" demonstrates that he had the requisite deficits in adaptive functioning. Contrary to Denson's argument, "evidence of poor grades or special education classes does not compel a finding that a plaintiff suffered deficits in adaptive functioning." *Gauch v. Colvin*, No. 2:14CV86 RLW, 2015 WL 5243020, at *11 (E.D. Mo. Sept. 8, 2015) (citing *Cheatum*, 388 Fed. App'x at 576). "Instead, the ALJ may rely on evidence that a plaintiff was able to maintain employment for many years, as well as perform activities of daily living to conclude that a plaintiff does not meet that requirement of the Listing." *Id.*

The ALJ acknowledged that Denson received special education, but pointed out that Denson graduated from high school and testified that he is able to read and write. (Tr. 15, 36.) The ALJ discussed Denson's daily activities, noting Denson's testimony that he can drive (Tr. 35), has no problem with personal care (Tr. 44), reads the newspaper (Tr. 43), is able to cook "a little" (Tr. 39), has friends (Tr. 42), gets along with his mother (Tr. 42), plays football with neighbors (Tr. 41), shops for a few grocery items (Tr. 41), attends church (Tr. 42), visits with an uncle (Tr. 44), and drinks beer and "smokes dope" while visiting with others (Tr. 44). (Tr. 15.) The ALJ noted that Denson does not often cook or perform household chores only because his mother, with whom he lives, does these tasks for him. (Tr. 13.) This is consistent with Denson's testimony at the hearing that he washed his own dishes if his mother "don't want to wash it," and was able to make his bed but sometimes did not "feel like making it." (Tr. 40.)

Most significantly, the ALJ discussed Denson's work history. He stated that Denson has a "good consistent work history as a poultry hanger and hand packer," and that Denson testified that he stopped working "because he did not have any transportation and the chickens were too big."

(Tr. 15.)  The ALJ stated later in his opinion that Denson has a "consistent work history with substantial earnings," and that it was "unclear why he stopped working, but it is not documented that it was for any physical or mental condition."  (Tr. 17.)  The record reveals that Denson worked for twenty years, earning over $10,000 in multiple years.  (Tr. 189.)  Denson's ability to work for many years despite his low IQ is not consistent with having deficits in adaptive functioning to meet Listing 12.05C.  *See Cheatum*, 388 Fed. Appx. at 577 (ability to maintain employment in semi-skilled and unskilled positions for many years considered as a factor inconsistent with mental retardation); *Hines v. Astrue*, 317 Fed. Appx. 576, 579 (8th Cir. 2009) (ability to perform semi-skilled job considered as a factor inconsistent with mental retardation); *Travis v. Colvin*, No. 4:15CV936 JMB, 2015 WL 8663995, at *6 (E.D. Mo. Dec. 14, 2015) (ability to work "seriously undercuts [claimant]'s alleged limitations in adaptive functioning").

The ALJ also discussed the relevant medical evidence regarding Denson's mental impairments, consisting of two consultative psychological examinations.  Denson saw Paul W. Rexroat, Ph.D., on November 15, 2012, upon the referral of the state agency.  (Tr. 261.)  Dr. Rexroat stated that Denson was socially confident and comfortable in his interactions, generally understood instructions readily, exhibited an overall appropriate attitude towards the evaluation and maintained good interest and effort, his approach to assessment tasks was methodical and orderly and he was challenged by difficult items, he was appropriately persistent when working on test items, he recognized errors and reacted realistically, and he exhibited no unusual or bizarre behaviors during the session.  (Tr. 262.)  Dr. Rexroat administered the Wechsler Adult Intelligence Scale-IV ("WAIS-IV"), on which Denson achieved a Full Scale IQ of 67.  (Tr. 262.)  Dr. Rexroat stated that this score placed Denson in the Extremely Low (Mild Mental Retardation) range of intelligence, but this did not best summarize his "unique combination of intellectual

abilities." (Tr. 263.) He stated that Denson's verbal reasoning abilities were significantly weaker than his nonverbal reasoning abilities. (Tr. 265.) Dr. Rexroat found that Denson was able to understand and remember simple instructions; sustain concentration and persistence with simple tasks; interact socially; and had mild limitations in his ability to adapt to his environment. *Id.* He diagnosed Denson with mild mental retardation and cannabis abuse. (Tr. 266.)

Denson saw David Dahlbeck, Ph.D, for a consultative psychological examination on September 12, 2013. (Tr. 270.) Dr. Dahlbeck stated that Denson was pleasant and behaved appropriately throughout the appointment, his general attitude was appropriate, his stream of mental activity seemed disorganized at times, he maintained appropriate levels of eye contact, his affect was appropriate, he did not demonstrate adequate abstract thinking and reasoning, and his judgment was adequate. (Tr. 271.) Dr. Dahlbeck stated that, based on the mental status examination, Denson's estimated IQ was in the borderline intellectual functioning range. *Id.* He found that Denson was capable of completing simple tasks in a work environment, was able to sustain concentration in simple tasks in the work environment, may have difficulties on tasks that require higher levels of attention over long periods of time, and would have difficulties with moderate to complex tasks or tasks requiring multi-step instructions. (Tr. 272.) Dr. Dahlbeck further found that Denson was able to interact in socially appropriate ways and adapt to minor changes in his work environment. *Id.* He noted that Denson likely required assistance in managing his funds independently and would benefit from classes or programs that would help promote and improve his adaptive functioning and independent living skills. *Id.*

The ALJ cited the findings of Drs. Dahlbeck and Rexroat that Denson was capable of completing simple tasks and sustaining concentration on simple tasks in the work environment, and was able to interact in socially appropriate ways and adapt to minor changes in the work

environment. (Tr. 18.) He stated that these findings were consistent with the other evidence of record. *Id.*

Denson points to other evidence in the record that he claims supports deficits in adaptive functioning. For example, Denson cites to statements from his mother that other children made fun of Denson and called him "dumb" (Tr. 249), and that he is unable to perform household chores (Tr. 213-15). The ALJ acknowledged these third party statements, but found that they were not supported by the record. (Tr. 17.) For example, despite claims by Denson's mother that Denson has social difficulties, both consultative psychologists found that Denson was capable of interacting in socially appropriate ways. Although there is some evidence that could support a contrary result, this Court must determine whether substantial evidence exists to support the ALJ's determination. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

Based on the record as a whole, including Denson's abilities and limitations, the Court concludes that substantial evidence exists to support the ALJ's finding that Denson lacked the requisite deficits in adaptive functioning to meet Listing 12.05C. *See*, *e.g. Scott v. Berryhill*, 855 F.3d at 856-57 (claimant who did not complete high school, obtained 63 IQ score, read poorly, cannot manage finances or complete forms without assistance, but lived independently, drove, shopped, and had a good memory did not meet Listing 12.05C's requirements for deficits in adaptive functioning); *Ash v. Colvin*, 812 F.3d 686, 690-93 (8th Cir. 2016) (claimant's diagnosis of mild mental retardation, special education classes, and special work accommodations did not outweigh her ten year work history, ability to shop independently, manage finances, and only moderate limitations in sustaining attention and concentration in determining the existence of deficits of adaptive functioning). Thus, the Court finds that the ALJ's determination that Denson did not meet Listing 12.05C is supported by substantial evidence.

The ALJ proceeded with the sequential analysis to find that Denson had the RFC to perform a range of medium work involving simple routine 1-2 step tasks, and instructions with only occasional decision-making. (Tr. 14.) He concluded that Denson was not disabled because he could perform past relevant work as a poultry hanger and hand packer, as well as other work, with this RFC. Denson does not address these additional findings.

## V. Conclusion

Substantial evidence in the record as a whole supports the decision of the ALJ finding Denson not disabled because the evidence of record does not support the presence of a disabling impairment. Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of September, 2017.